ZEICHNER ELLMAN & KRAUSE LLP

1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
TEL: (212) 223-0400

ROBERT W. RAY
(212) 826-5321
rray@zeklaw.com

WWW.ZEKLAW.COM

December 3, 2020

**Via ECF**

Honorable Philip M. Halpern
United States District Judge
Southern District of New York
500 Pearl Street, Room 1950
New York, New York 10007

Re: ***Zherka v. Barr***, 20 Civ. 7469 (PMH)

Dear Judge Halpern:

We represent plaintiff Selim "Sam" Zherka in the referenced action. Pursuant to the Court's Individual Practices, Rules 2.C and 4.C.iii, we submit this letter response to Defendant's letter, dated November 24, 2020 (the "Letter"), which requests a pre-trial conference and permission to file a motion to dismiss Plaintiff's complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Letter acknowledges that there are questions of law presented by the Complaint constituting matters of first impression before the Second Circuit Court of Appeals. *See, e.g., United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) (per curiam) (rejecting only facial constitutional challenge to 18 U.S.C. § 922(g)(1)). Recent decisions on this issue, both within and without this Circuit, have shown an increased awareness that the blanket ban imposed on felons by § 922(g)(1) is unconstitutional. *See*, *infra*, discussion of dissents in *Folajtar* (3rd Cir.) and *Kanter* (7th Cir.). Nevertheless, the Letter speculates, without foundation, that the Second Circuit would join with those circuits other than the Third Circuit that reject any as-applied challenges to § 922(g)(1). In *Binderup v.*

ZEICHNER ELLMAN & KRAUSE LLP

Hon. Philip M. Halpern
December 3, 2020
Page 2

*Attorney General*, 836 F.3d 336 (3rd Cir. 2016) (en banc), the Third Circuit found an as-applied challenge to the constitutionality of § 922 persuasive, ruling that because the crimes at issue were not violent, § 922(g)(1) could not withstand even intermediate judicial scrutiny since there was no evidence that public safety was at risk.  In addition, in a concurring opinion, Judge Hardiman was unequivocal that § 922(g)(1) "completely eviscerates the *Second Amendment* right."  Thus, an as-applied challenger to § 922(g)(1) must "present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class[1]."  *Id.* at 366 (Hardiman, J., concurring).

The *Binderup* precedent was narrowly construed in a recent subsequent panel decision in *Folajtar v. Attorney General*, No. 19-1687, 2020 WL 6879007 (3rd Cir. Nov. 24, 2020).  In what can only be described as a strained reading of the en banc controlling holding in *Binderup*, the *Folajtar* panel upheld denial of a gun license to a felon convicted of tax fraud years earlier, claiming that the rights ensconced in the Second Amendment are accessible only to "virtuous citizens," which perforce excludes *all* felons.  The panel ignored *Binderup*'s careful analysis in evaluating when an as-applied challenge should be successful, instead opting for a blanket ban against all felons, without regard to the nature of the underlying crime.  The dissent, however, essentially demolished the "virtuous citizen" argument advanced by the majority.  Instead, the dissent found that

---

[1]  Judge Hardiman's concurring opinion is particularly instructive:  "[There are] at least two ways of doing this: (1) 'a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen,' or (2) 'a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society.'"  836 F.3d at 366.

Zeichner Ellman & Krause llp

Hon. Philip M. Halpern
December 3, 2020
Page 3

"dangerousness," and not the arbitrary label of "felony," was historically the deciding factor in whether a felon was entitled to restoration of his Second Amendment rights.[2]

Section 922(g)(1)'s susceptibility to certain as-applied challenges similarly was emphasized by then-Judge Amy Coney Barrett (now Justice Barrett) in her dissent in *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting). *Kanter* concerned the question of whether a felon convicted of federal mail fraud has a constitutional right to own a handgun. Judge Barrett found that he did: "Absent evidence that Kanter would pose a risk to the public safety if he possessed a gun, the government cannot permanently deprive him of his right to keep and bear arms."[3] While it is impossible to predict with certainty how the Second Circuit will rule on an as-applied challenge to § 922(g)(1), the particular circumstances of this Plaintiff's crime – non-violent and financial – may very well prove as amenable to a favorable ruling as was the case before the en banc court in *Binderup*.

The dissenting/concurring opinions in the *Binderup, Folajtar* and *Kanter* cases bear a striking resemblance to an earlier decision by this Court's Southern District of New York and White Plains colleague Judge Karas in *United States v. Lahey*, 967 F.Supp.2d 731 (S.D.N.Y. 2013) (KMK). In *Lahey*, the Government charged the defendant under § 922(h)

---

[2]   "Yet the majority sets aside almost all the factors weighed in *Binderup*. Instead, it attaches near-dispositive weight to the felony label. Historically, it is true that felons had no right to guns while they were jailed and awaiting execution. But that 'civil death' does not fit long after a nondangerous felon reenters society. And most felonies today are far less serious than capital crimes." *Folajtar, supra*, 2020 WL 6879007 at *57 (Bibas, J., dissenting).

[3]   "§ 922(g)(1), which applies to all felons, is 'wildly overinclusive.' Adam Winkler, Scrutinizing the Second Amendment, 105 MICH. L. REV. 683, 721 (2007). Its application is not limited to those who have committed violent crimes like murder, assault, and rape. It also encompasses those who have committed any nonviolent felony or qualifying state-law misdemeanor—and that is an immense and diverse category." *Id.* at 466 (Barrett, J., dissenting).

ZEICHNER ELLMAN & KRAUSE LLP

Hon. Philip M. Halpern
December 3, 2020
Page 4

with illegal possession of a firearm while in the employ of convicted felons.  The court found in favor of the Government but indicated that an as-applied challenge to § 922 might well be successful when the individual's rights were impaired solely because he was a member of a broad and overinclusive category of people.  967 F.Supp.2d at 752.  Judge Karas clearly countenanced scenarios where § 922's impact would be so onerous and indiscriminate that an as-applied challenge would be successful:  "Of course, nothing in this Opinion should be read to rule out the possibility that, on a different set of facts, a defendant might be able to establish that the application of [§ 922] to him [or her] would burden his [or her] right to keep and bear arms so substantially as to render the statute unconstitutional as applied."  *Id.* at 755.

Section 925 functions as a gatekeeper for any felon attempting to restore his Second Amendment rights.  Before a felon can seek redress from a federal District Court, ordinarily he first must avail himself of the administrative procedure afforded in § 925.  Of course, because that avenue is now foreclosed, a felon seeking to secure a firearm license is in effect stripped of all due process.  (Complaint, ¶ 34.)

Because this Catch-22 result also impairs a felon's underlying constitutional rights, it cannot be justified simply on the grounds that implementing § 925's administrative procedures would create "expense and other difficulties of individual determinations…." *Black v. Snow*, 272 F.Supp.2d 21, 29-30 (D.D.C. 2003).  In *Black v. Snow*, relied upon by the Government here, the court considered the question of non-violent felons' access to firearms not on constitutional grounds, but on whether Congress's decision to deny individuals in one classification, *i.e.*, felons, both violent and non-violent, was rational.

ZEICHNER ELLMAN & KRAUSE LLP

Hon. Philip M. Halpern
December 3, 2020
Page 5

The court decided it was and that, coupled with the presumption that felons were entitled to no *special* Second Amendment privileges, was sufficient to reject both facial and as-applied challenges.  *Id.* at 34.  That pre-*Heller* decision, we submit, does not withstand Second Amendment scrutiny and is, therefore, no longer good law.

*Black* is, however, in line with later authority on this issue in the D.C. Circuit which holds that all felons, non-violent or otherwise, do not enjoy Second Amendment rights.  *See Medina v. Whitaker*, 913 F.3d 152, 161 (D.C. Cir. 2019).  The administrative cost-benefit analysis employed by the D.C. Circuit has not, however, been adopted by the Second Circuit which, if current judicial trends continue, will likely be viewed as a violation of a fundamental constitutional right – rather than as a denial of an administrative benefit – and thus subject to heightened judicial scrutiny, as required by the Constitution.

Accordingly, Plaintiff maintains that (i) Defendant's legal objections to the Complaint do not warrant dismissal in the absence of controlling precedent in this Circuit requiring such relief and will, in any event, not be resolved by any amendment of the pleading; (ii) the Complaint is supported by, *inter alia*, the legal authorities and reasons cited above; and (iii) the claims presented in the Complaint will constitute matters of first impression if eventually heard by the Second Circuit (and possibly later by the Supreme Court) and as such require the District Court's full development of the record and review in this proceeding.

Respectfully submitted,

/s/ Robert W. Ray

Robert W. Ray