UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SELIM "SAM" ZHERKA,

Plaintiff,

-against-

MERRICK B. GARLAND, Attorney General, in his official capacity,

Defendant.

**MEMORANDUM OPINION AND ORDER**

20-CV-07469 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Selim "Sam" Zherka ("Plaintiff") brings this action against Merrick B. Garland ("Defendant"), in his official capacity as the Attorney General,[1] alleging violations of his Second and Fifth Amendment rights. Specifically, Plaintiff claims that: (1) 18 U.S.C. § 922(g)(1), as applied to him—an individual convicted of a non-violent financial felony—violates the Second Amendment; and (2) his inability to seek relief under 18 U.S.C. § 925(c) violates his Fifth Amendment due process rights.[2]

On September 11, 2020, Plaintiff filed his Complaint. (Doc. 1, "Compl."). The Court held a telephonic pre-motion conference on January 13, 2021 to address Defendant's contemplated motion to dismiss and set a briefing schedule. (Jan. 13, 2021 Min. Entry). All motion papers were filed on April 9, 2021. (Doc. 12; Doc. 13, "Def. Br."; Doc. 14, "Pl. Opp."; Doc. 15, "Reply").

---

[1] Merrick B. Garland is automatically substituted for William P. Barr as the Defendant in this action, in accordance with Fed. R. Civ. P. 25(d); and the Court hereby confirms that substitution as an order of the Court.

[2] Plaintiff includes a third claim for declaratory and injunctive relief. (Compl. ¶¶ 35-42). Although it is pled as a distinct claim for relief, this claim merely states the relief sought for Plaintiff's first and second claims for relief (the alleged violations of Plaintiff's Second and Fifth Amendment rights). Taken together, the Court considers Plaintiff's two constitutional attacks spread over these claims for relief.

After the motion was fully submitted, both parties filed several letters addressing recent Second Amendment cases that were decided after the briefing had concluded in this case. (Docs. 16-21).

## BACKGROUND

On or about December 22, 2015, Plaintiff pled guilty in the United States District Court for the Southern District of New York to one count of criminal conspiracy, 18 U.S.C. § 371, the objects of which were to make a false statement to a bank and to sign and file a false federal income tax return. (Compl. ¶ 4).[3] Plaintiff's fraud caused tens of millions of dollars in losses. *See United States v. Zherka*, No. 14-CR-00545 (S.D.N.Y. 2014) ("*Zherka*"), Doc. 194 at 10:11-18. On December 22, 2015, Plaintiff was sentenced to 37 months' imprisonment, along with a fine of $1.5 million, over $1.8 million in restitution, and over $5.2 million in forfeiture. (Compl. ¶ 5); *see also Zherka*, Doc. 168. Plaintiff was released from prison on or about January 4, 2017 and served the remainder of his sentence in home confinement until on or about May 26, 2017. (Compl. ¶ 5). Plaintiff then commenced a three-year term of supervised release, which concluded on or about May 26, 2020. (*Id*. ¶ 12). Plaintiff acknowledges that, notwithstanding the non-violent nature of his crime, 18 U.S.C. § 922(g)(1) categorically bars him from acquiring, receiving, or possessing a firearm.[4] (*Id*. ¶¶ 6, 13).

---

[3] The Court, in this Memorandum Opinion and Order, takes judicial notice of court documents and legislative histories, which is permissible on a Rule 12(b)(6) motion. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (stating that courts may take judicial notice of court documents); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y. 2016) ("In deciding a motion to dismiss under Rule 12(b)(6), a court can take judicial notice of court documents."); *Wang v. Pataki*, 396 F. Supp. 2d 446, 453 n.1 (S.D.N.Y. 2005) ("The Court may also take judicial notice of public documents, such as legislative histories.").

[4] Section 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year[] . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

At the time Section 922(g)(1) was enacted, in 1968, Congress provided a mechanism through which a convicted felon, like Plaintiff, could seek relief from Section 922(g)(1)'s prohibition by applying to a program administered by the Bureau of Alcohol Tobacco, Firearms and Explosives ("ATF") (as delegated by the Attorney General) to demonstrate that "'the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.'" (*Id*. ¶ 14 (quoting 18 U.S.C. § 925(c)). Since 1992, however, Congress has prohibited the federal funds appropriated for the ATF to be used for investigating and reviewing applications made under Section 925(c). (*Id*. ¶ 16). Congress abandoned this approach after finding that "too many . . . felons whose gun ownership rights were restored went on to commit violent crimes with firearms." H.R. Rep. No. 104-183, at 15.

As a result of the lack of process and/or decision-making, any application for relief made under Section 925(c) "would be returned, not acted upon and neither granted nor denied." (Compl. ¶ 16). This inaction would cause any petition for review of such application filed in a United States District Court to be dismissed for lack of statutory subject matter jurisdiction, thereby rendering futile any application made under Section 925(c). (*Id*. ¶¶ 17-18).

## STANDARD OF REVIEW[5]

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

---

[5] Plaintiff, in his opposition, argues that the Complaint satisfies the *Iqbal/Twombly* pleading standard because, *inter alia*, it "present[s] a question of law that is one of first impression in this Circuit." (Pl. Opp. at 4). Plaintiff cites no case law, however, to support this reading of the well-worn standard on a Rule 12(b)(6) motion. That the Complaint raises a pure legal question that has yet to be decided in this Circuit is, alone, insufficient to overcome Defendant's motion to dismiss, especially where, as here, Plaintiff concedes that the "salient facts in this action are not in dispute." (Pl. Opp. at 3). The ultimate question of plausible pleading is a distinct analysis from whether there is a question of law of first impression.

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, a court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

I.   Second Amendment

    A.  Legal Framework

Plaintiff insists that Section 922(g)(1), as applied to him—an individual convicted of a non-violent financial felony associated with false bank statement and income tax filings—violates his Second Amendment rights. "Over the past decade, the Second Circuit has built a framework for adjudicating asserted violations of individuals' Second Amendment rights." *United States v.*

*Witcher*, No. 20-CR-00116, 2021 WL 5868172, at \*4 (S.D.N.Y. Dec. 10, 2021). "The Second Amendment provides that '[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.'" *Id*. (quoting U.S. Const. amend. II.). "The U.S. Supreme Court announced in 2008 that the Second Amendment guarantees 'the individual right to possess and carry weapons in case of confrontation,'" *id*. (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)), "and incorporated that right against the states two years later," *id*. (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)). "Like most rights," however, "the Second Amendment right is not unlimited." *Heller*, 554 U.S. at 626. *Heller* identified the right to "use arms in defense of hearth and home" as belonging to "law-abiding, responsible citizens," *id*. at 635, and stated that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," *id*. at 636.

Following *Heller* and *McDonald*, the Second Circuit has "articulated a two-step inquiry to adjudicate whether a statute violates an individual's Second Amendment rights." *Witcher*, 2021 WL 5868172, at \*4. First, courts "'must determine whether the challenged legislation impinges upon conduct protected by the Second Amendment.'" *Id*. (quoting *United States v. Jimenez*, 895 F.3d 228, 232 (2d Cir. 2018)). Second, if a court finds "'that a law implicates the Second Amendment as *Heller* instructed [courts] to interpret it,'" then the court must "'determine the appropriate level of scrutiny to apply and evaluate the constitutionality of the law using that level of scrutiny.'" *Id*. (quoting *Jimenez*, 895 F.3d at 232).

      B.  <u>Application</u>

Because Section 922(g)(1), as a "prohibition on the possession of firearms by felons," is "presumptively lawful" under *Heller*, Plaintiff carries the burden of rebutting that presumption in the first instance. *Heller*, 554 U.S. at 626, 627 n.26; *see also Jimenez*, 895 F.3d at 235. Plaintiff

has not done so here. Drawing all inferences in Plaintiff's favor, he has failed to plausibly allege that he "is among 'the people' to whom the Second Amendment right applies," *Witcher*, 2021 WL 5868172, at *4, namely "*law-abiding responsible citizens*," *Heller*, 554 U.S. at 635 (emphasis added). Accordingly, Plaintiff's as-applied challenge fails at the first step of the analysis.

Since the Supreme Court's decisions in *Heller* and *McDonald*, the constitutionality of Section 922(g)(1) has confronted several facial and as-applied challenges. Every circuit court to have considered a facial challenge—including the Second Circuit—has rejected it. *See, e.g.*, *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) (per curiam); *United States v. Barton*, 633 F.3d 168, 175 (3d Cir. 2011), *overruled on other grounds by Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016)); *United States v. Moore*, 666 F.3d 313, 318 (4th Cir. 2012); *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011); *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011); *United States v. Rozier*, 598 F.3d 768, 770-71 (11th Cir. 2010); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009).

Compared to the complete failure of facial challenges thus far, as-applied challenges, like Plaintiff's here, have had a bit more success (albeit minimal). While the Second Circuit has not yet directly addressed whether Section 922(g)(1) burdens conduct protected by the Second Amendment as applied to non-violent financial felons, this Court does not write on a *tabula rasa* when it comes to addressing this issue. Several other circuit courts—including the D.C. Circuit, the Fourth Circuit, the Fifth Circuit, and the Eleventh Circuit—have already confronted such a challenge, and none have held Section 922(g)(1) unconstitutional as applied to a convicted felon. *See, e.g.*, *Medina v. Whitaker*, 913 F.3d 152, 155 (D.C. Cir. 2019); *Hamilton v. Pollizi*, 848 F.3d

614, 626 (4th Cir. 2017); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *Rozier*,

598 F.3d at 771. "The Seventh and Eighth Circuits have left open the possibility of a successful

felon as-applied challenge, but have yet to uphold one." *Medina*, 913 F.3d at 155 (citing *United*

*States v. Woolsey*, 759 F.3d 905, 909 (8th Cir. 2014); *Williams*, 616 F.3d at 693-94). Only the

Third Circuit has upheld an as-applied challenge to Section 922(g)(1), but its holding was limited

to state-law misdemeanants who nonetheless fell within the scope of Section 922(g)(1). *See*

*Binderup*, 836 F.3d at 353 n.6.

It is against this backdrop of largely unsuccessful constitutional attacks on Section

922(g)(1) that this Court considers—apparently as a matter of first impression in this Circuit—

whether Section 922(g)(1) burdens conduct protected by the Second Amendment as applied to

non-violent felons. Absent on-point Second Circuit precedent, the Court, in making this

determination, first looks to the reasoning employed by other courts of appeals. The D.C. Circuit's

decision in *Medina v. Whitaker* is particularly instructive.

The plaintiff in *Medina*, in a very similar vein to Plaintiff, was convicted of misrepresenting

his income on a mortgage finance application to qualify for a loan from a federally insured bank,

in violation of 18 U.S.C. § 1014. 913 F.3d at 154. He argued that "evidence of his past 'disregard

for the law' [was] insufficient to disarm him," because in his view, "the scope of the Second

Amendment only excludes dangerous individuals." *Id*. at 157. The *Medina* panel rejected that

argument, and in doing so, held categorically that "those convicted of felonies are not among those

entitled to possess arms." *Id*. at 160. The *Medina* panel, in so holding, reasoned that:

> Using an amorphous "dangerousness" standard to delineate the
> scope of the Second Amendment would require the government to
> make case-by-case predictive judgments before barring the
> possession of weapons by convicted criminals, illegal aliens, or
> perhaps even children. We do not think the public, in ratifying the
> Second Amendment, would have understood the right to be so

> expansive and limitless. At its core, the Amendment protects the
> right of "law-abiding, responsible citizens to use arms in defense of
> hearth and home." Whether a certain crime removes one from the
> category of "law-abiding and responsible," in some cases, may be a
> close question. For example, the crime leading to the firearm
> prohibition in *Schrader*—a misdemeanor arising from a fistfight—
> may be open to debate. Those who commit felonies however, cannot
> profit from our recognition of such borderline cases.

*Id*. at 159-160 (quoting *Heller*, 554 U.S. at 635). Having established that a felony conviction

"removes one from the scope of the Second Amendment," the *Medina* court concluded that the

plaintiff's as-applied challenge to Section 922(g)(1) failed at step one of its analysis.[6]  *Id*. at 160.

Here, similar to the plaintiff in *Medina*, Plaintiff was convicted of the felony of conspiracy

to commit fraud on a bank and in I.R.S. tax filings, and similarly argues that because his crime

was "non-violent," he should not be excluded from the Second Amendment's protections. (Compl.

¶¶ 2, 4, 23). Plaintiff's theory, essentially, is that aside from a single brush with the law, he is "an

exemplary private citizen" (Pl. Opp. at 9), and therefore, he is no more dangerous with a gun in

hand than any other "law-abiding, responsible citizen[]," *Heller*, 554 U.S. at 635. Here, as in

*Medina*, Plaintiff's theory fails, because one need not be dangerous to be removed from the

category of "law abiding, responsible citizens" for purposes of the Second Amendment. *Id*.; *see*

*also Folajtar v. Att'y Gen. of the U.S.*, 980 F.3d 897, 904, 906 (3d Cir. 2020) (holding that "felonies

are serious enough to ban firearm possession" without considering "dangerousness"); *United*

*States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010) (per curiam) ("[M]ost scholars of the

Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry

and that, accordingly, the government could disarm 'unvirtuous citizens.'" (quoting *Vongxay*, 594

F.3d at 1118)). Without passing judgment on Plaintiff's allegedly non-violent nature or his post-

---

[6] The D.C. Circuit applies a two-step Second Amendment analysis that is similar to the analysis applied in this Circuit. *See Schrader v. Holder*, 704 F.3d 980, 988-89 (D.C. Cir. 2013).

conviction behavior, the bottom line is that Plaintiff is *not* a law-abiding, responsible citizen for Second Amendment purposes. He is a felon who was convicted just over six years ago of an extremely serious crime. *See Mbendeke v. Garland*, 860 F. App'x 191, 194 (2d Cir. 2021) (finding fraud crimes to be "particularly serious"); *see also Medina*, 913 F.3d at 160 (finding felony fraud to be "a serious crime, *malum in se*, that is punishable in every state"). Indeed, Plaintiff's crime was "not a peccadillo criminalized only by a quirk of state law" (Def. Br. at 12), i.e., the type of offense that may be "open to debate," *Medina*, 913 F.3d at 160—he committed a grave offense demonstrating "no respect for the truth or for his legal, let alone moral obligations to tell it." *Zherka*, Doc. 194 at 91:8-10. Therefore, as in *Medina*, this Court declines to place Plaintiff within the category of people protected by the Second Amendment based on his alleged lack of dangerousness, and instead concludes that his status as a felon, albeit a non-violent one, necessarily removes him from the category of "law-abiding, responsible citizens" entitled to possess firearms. *Heller*, 554 U.S. at 635.

This conclusion is further bolstered by the Second Circuit's decision in *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106 (2020), which addressed an as-applied challenge to a New York State statute. The statute at issue in *Libertarian Party* specified that "no firearm license is to be allowed for *inter alios*, persons convicted of 'serious offense[s],' drug addicts, and 'fugitives from justice.'" *Id*. at 127 (citations omitted). The panel in *Libertarian Party*, applying the first step of this Circuit's Second Amendment analysis, went on to hold that the New York statute's "serious offenses" provision "does not burden the ability of '*law-abiding, responsible* citizens to use arms in defense of hearth and home,'" and therefore, "the conditions placed on the core Second Amendment right are not onerous." *Id*. (citations omitted). Here, like the New York statute in *Libertarian Party*, Section 922(g)(1) prohibits firearm possession based on an individual's

felonious history, and therefore, it likewise does not impinge on the Second Amendment rights of law-abiding, responsible citizens.

Accordingly, this Court, guided by the Second Circuit and a chorus of other courts of appeals, holds that the application of Section 922(g)(1) to individuals convicted of non-violent financial felonies, like Plaintiff, does not impinge upon conduct protected by the Second Amendment. Therefore, Plaintiff's claim fails at step one of the analysis. Having concluded that Plaintiff's claim fails at step one, the Court need not and does not reach the second step of the analysis.[7] *See, e.g.*, *Medina*, 913 F.3d at 161 ("Because the claim fails at the first step of the . . . analysis, we need not reach the second step."); *Hamilton*, 848 F.3d at 629 (concluding analysis after holding that plaintiff's claim fails at step one).

II.   Fifth Amendment

The Court next turns to Plaintiff's Fifth Amendment due process claim, by which he asserts that, insofar as he is unable to seek relief from Section 922(g)(1)'s firearms ban through Section 925(c), his due process right as a non-violent felon have been violated.

Section 925(c) provides an individual who falls within the scope of Section 922(g)(1)'s firearms ban with the opportunity to petition the ATF (via delegation by the Attorney General) to restore his or her right to possess firearms. In 1992, however, Congress ceased funding for this

---

[7] The Court assumes without deciding that, if it were to reach the second step of the analysis, intermediate scrutiny would apply. *See, e.g.*, *Jimenez*, 895 F.3d at 236; *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 260 (2d Cir. 2015); *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012). Defendant, agreeing that intermediate scrutiny would apply, argues that even if Section 922(g)(1) impinges upon conduct protected by the Second Amendment, the law would survive intermediate scrutiny as applied to Plaintiff because Section 922(g)(1)'s prohibition on felons possessing firearms is substantially related to Congress's compelling interest in public safety and crime prevention. (Def Br. at 14-18; Reply at 7-8). Plaintiff does not oppose either of Defendant's arguments that (1) intermediate scrutiny applies; and (2) Section 922(g)(1) survives such scrutiny. (Reply at 7-8). Therefore, even if the Court were to reach step two of the analysis, Plaintiff has abandoned these aspects of his Second Amendment claim. *See, e.g.*, *Capak v. St. Execs Mgmt.*, No. 20-CV-11079, 2021 WL 2666007, at *5 (S.D.N.Y. June 29, 2021) ("Plaintiff did not respond to this argument in opposing the motion to dismiss, and has therefore abandoned the claim.").

review process, "citing its unworkability and high stakes," *Medina v. Sessions*, 279 F. Supp. 3d 281, 293 (D.D.C. 2017) (citing S. Rep. No. 102-353, at 19 (1992)); and the reality that many of the felons who obtained relief under this section later went back to committing violent felonies with the guns they lawfully possessed, H.R. Rep. No. 104-183, at 15. Therefore, Section 925(c) no longer affords convicted felons, like Plaintiff, an effective mechanism through which to seek relief from Section 922(g)(1)'s bar on firearms possession.

Plaintiff appears to allege that his procedural due process rights have been violated due to his inability to receive a hearing under Section 925(c) to determine whether (i) he is, in fact, currently dangerous; and (ii) he should have his ability to possess firearms reinstated.[8] (Compl. ¶¶ 33-34). Plaintiff's inability to receive such a hearing, however, does not constitute a procedural due process violation.

Indeed, Plaintiff's due process claim is foreclosed by the Supreme Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003). A class of convicted sex offenders in *Doe* brought a procedural due process challenge to Connecticut's sex offender registry law, which required all persons convicted of certain sex-related crimes to register with the State following their release from prison. The sex offender class complained that the law, which subjected them to reporting requirements without affording the opportunity of a hearing to

---

[8] Plaintiff also argues that "a close reading" of Section 925(c) reveals Congress's due process concerns and its intent, at the time of enactment, to create a "right of recourse" for felons seeking to reinstate their ability to possess firearms. (Pl. Opp. at 16). But Plaintiff provides no legislative history or case law to support his view of Congress's intent. Moreover, Plaintiff argues that the plain text of Section 925(c) "deems the failure to carefully review all the evidence presented by the felon-applicant to be nothing less than 'a miscarriage of justice.'" (*Id*. at 17 (quoting 18 U.S.C. § 925(c)). Plaintiff's textual interpretation, however, contorts the plain language of the statute, which merely states that a court "may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice." 18 U.S.C. § 925(c). The Court agrees with Defendant that nowhere does the text of Section 925(c) suggest that the failure to "carefully review" a felon's application automatically results in a miscarriage of justice or due process violation. (Pl. Opp. at 17; Def. Br. at 9 n.4).

demonstrate whether they were likely to be currently dangerous to the community, violated due process. The Supreme Court, in rejecting the sex offenders' challenge, held that individualized hearings were not required because the registration requirement was based "on the fact of previous conviction, not the fact of current dangerousness." *Id*. at 4. The Supreme Court reasoned that "where the fact to be proven at the hearing is not relevant to the legal scheme responsible for the deprivation (that is, where it is clear that the government would strip the individual of his liberty even if he were able to prove or disprove the particular the fact or set of facts), such a hearing would be an exercise in futility, which is not required by *procedural* due process." *Black v. Snow*, 272 F. Supp. 2d 21, 34 (D.D.C. 2003) (emphasis in original), *aff'd sub nom. Black v. Ashcroft*, 110 F. App'x 130 (D.C. Cir. 2004).

*Doe*'s rationale "dooms any procedural challenge to § 922(g)(1)," as "[t]he plain language of that provision makes clear Congress's decision to bar *all* convicted felons (not merely those with violent tendencies or who otherwise present an ongoing danger to society) from possessing firearms." *Id*. (emphasis in original). Here, as with the sex offender registry law in *Doe*, Section 922(g)(1) "make[s] the deprivation turn solely on the fact of the prior conviction—not the significance of that conviction for future behavior." *Id*. at 34-35. It follows, then, that "due process does not entitle [P]laintiff to a hearing to determine whether he is currently dangerous because the results of such a hearing would have no bearing on whether he is subject to the disability imposed by § 922(g)(1)." *Id*. at 35.

Accordingly, Plaintiff's due process claim premised on his inability to receive a hearing under Section 925(c) is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in its entirety.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 12 and close this case.

**SO ORDERED:**

Dated:  White Plains, New York
       March 23, 2022

_____

Philip M. Halpern
United States District Judge

13